UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MARVIN MOSBY, *et al.*,<br><br>                        Plaintiffs,<br>    v.<br>RENEE BAKER, *et al.*,<br>                        Defendants. | Case No. 3:14-cv-00251-MMD-WGC<br><br>ORDER |

**I.    SUMMARY**

Marvin Mosby's 28 U.S.C. § 2254 amended petition for writ of habeas corpus is before the Court for final disposition on the merits. (ECF No. 24.)

**II.    BACKGROUND**

In May 2011, a jury convicted Mosby of Count 1: larceny from the person, and Count 2: grand larceny. (Exhibit ("Exh.") 50.)[1] The presentence investigation report, which Mosby did not challenge or dispute, reflected 12 prior felonies, including two convictions for ex-felon in possession of a firearm, 10 misdemeanors, eight prison terms and multiple parole violations. (Exh. 69.) The state district court adjudicated him a large habitual criminal and sentenced him to life without the possibility of parole. (Exh. 52.) Mosby filed a motion for reconsideration. (Exh. 53.) The state district court conducted a hearing and denied the motion. (Exhs. 55, 56.) Judgment of conviction was filed on November 15, 2011. (Exh. 3.)

In November 2012, the Nevada Supreme Court affirmed the conviction as to Count 1 and reversed and remanded as to Count 2. (Exh. 5.) The amended judgment of conviction was filed in January 2013; Count 2 was dismissed and the sentence on count 1 remained the same. (Exh. 6.)

---

[1]Exhibits referenced in this order are found at ECF Nos. 15, 20, 25-26, 29, and 31.

In April 2014, Mosby filed what he called a supplemental petition for writ of habeas corpus. (Exh. 19.) He styled it as a supplement, but as no state postconviction petition had been filed, the state district court dismissed it as time-barred. (Exh. 63.) Mosby represented in a motion for leave to file the supplement that he had in fact submitted a state postconviction petition on September 3, 2013. (Exh. 25.) Ultimately, the Nevada Supreme Court reversed and remanded to the state district court for an evidentiary hearing as to whether a timely state postconviction petition had been filed. (Exh. 25.) The state district court conducted an evidentiary hearing, denied the petition, and the Nevada Court of Appeals affirmed. (Exhs. 26, 27, 33.) Remittitur issued on May 18, 2016. (Exh. 64.)

Meanwhile, Mosby dispatched his federal habeas petition for mailing on May 12, 2014. (ECF No. 1.) The Court appointed counsel, and Petitioner filed a counseled motion for stay and abeyance. (ECF Nos. 14, 15.) The Court granted the motion. (ECF No. 17.) On July 26, 2016, the Court granted Mosby's motion to reopen the case, and he filed a counseled, first-amended petition on December 15, 2016. (ECF No. 24)[2] Respondents have now answered the two grounds in the first-amended petition (ECF No. 46), and Mosby replied (ECF No. 48).

**III.    LEGAL STANDARD**

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), provides the legal standards for the Court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

---

[2]The Court granted Respondents' motion to dismiss this petition as time-barred in July 2017, and judgment was entered. (ECF Nos. 35, 36.) Mosby appealed, and the Ninth Circuit Court of Appeals reversed and remanded based on its conclusion that the Court had previously, erroneously dismissed a habeas petition that Mosby filed in 2013. (*See* ECF Nos, 41, 42 *in* Case No. 2:13-cv-01609-APG-VCF.)

2

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). The Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (first quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and then citing *Bell*, 535 U.S. at 694).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires

the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *See, e.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *See Cullen*, 563 U.S. at 181.

## IV.   DISCUSSION

Mosby challenges his sentence of life without the possibility of parole on two bases. In ground 1 he argues that such a sentence for stealing a camera worth less than $500 constitutes cruel and unusual punishment. In ground 2 he asserts that the trial court relied on speculation about other crimes that Mosby may have committed in sentencing him so harshly.

The state district court sentenced Mosby on two separate cases during the same hearing, sentencing him on this case—C271646—first:

The Court: C271646, Marvin Dwayne Mosby. He's got two cases. And

4

C272379. We'll do the 646 one first…

(Exh. 52.)

The State presented 7 certified judgments of conviction in support of habitual criminal adjudication:

1984 California attempt grand theft from a person and grand theft from a person,

1992 California possession of a firearm by a felon,

1994 California grand theft from a person,

1996 California grand theft from a person,

2001 California theft, false imprisonment of another,

2001 California grand theft access cards,

2006 Clark County, Nevada burglary and larceny from a person.

(*Id.* at 3-4.)

With respect to the Clark County conviction above, the State explained:

Your Honor, he actually wound up being revoked from parole in that case and expired his sentence. Shortly after expiring his sentence in that case, he was released and committed the larceny from person [for which he was convicted in this case]. While on bail for that case, he was committing larcenies from the person, again, at a Target store and a Vons store. That [case] is still pending . . . .

(*Id.* at 3-4.) The State then argued that habitual criminal adjudication was appropriate:

Your Honor, he is by definition, by every definition we can possibly think of a habitual criminal. He has proved time and time again that not only is he going to reoffend, but being sentenced to prison doesn't stop him, being out on bail doesn't stop him, having other charges pending doesn't stop him, and he just keeps doing the same thing over and over again. I am asking for life without the possibility of parole.

(*Id.* at 4.)

Mosby then addressed the court and stated that he did not want to go to trial on this case, but that the district attorney involved had a "personal vendetta" against him stemming from a hung jury in another case and refused to offer a guilty plea deal. (*Id.* at 5.)

5

Defense counsel urged the court that Mosby was a non-violent offender, essentially a pickpocket, a 47-year-old habitual petty thief who had never received habitual treatment. He pointed out that the longest prison term Mosby had previously been sentenced to was 5 years, and that he had served about half of that term. Counsel asked the court to adjudicate Mosby under the small habitual criminal statute, which carried a sentence of 5 to 12 ½ years. (*Id.* at 5-6.)

The court then pronounced:

> Mr. Mosby, handsome man like you I have to sentence like this is just unfathomable. But every time you're out, you're committing felonies and it hurts people. Whether you want to believe it's a violent offense or not, it hurts people financially when you take their property. And the fact that you haven't rehabilitated yourself is clear. You like guns, you now have two convictions for guns by an ex-felon, it's just a time bomb waiting to happen. So because of that, you're adjudged guilty of larceny from the person and grand larceny. Both felonies . . . . you're sentenced to life without the possibility of parole.

(*Id.* at 6-7.)

### A.   Ground 1

Mosby contends that his sentence of life in prison without the possibility of parole for stealing a camera worth less than $500 violates his Eighth Amendment right to be free from cruel and unusual punishment. (ECF No. 24 at 8-9.)

"The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring); *see, e.g., Solem v. Helm*, 463 U.S. 277, 303 (1983) (holding that a sentence of life imprisonment without the possibility of parole for seventh nonviolent felony violates Eighth Amendment). "[O]utside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare." *Id.* at 289-90. A federal proportionality analysis may come into play "only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin*, 501 U.S. at 1005.

In fact, analyzing an appeal arising from a federal habeas case post-*Harmelin*, the Court has acknowledged that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (internal citations omitted).

In general, a sentence within the statutory limits does not constitute cruel and unusual punishment. *See United States v. Parker*, 241 F.3d 1114, 1117 (9th Cir. 2001). Courts grant "substantial deference to the broad authority" of legislatures to determine the types and limits of punishments for crimes. *Solem*, 463 U.S. at 290; *see also United States v. Albino*, 432 F.3d 937, 938 (9th Cir. 2005). Nevada's "large" habitual criminal statute, NRS 207.010(1)(b), provides that an individual adjudicated a large habitual criminal is guilty of a category A felony, punishable by up to life in prison without the possibility of parole.

Mosby appealed his adjudication as a habitual criminal and his sentence of life without the possibility of parole to the Nevada Supreme Court. The state supreme court affirmed his conviction and sentence:

> . . . . Mosby argues that a life sentence for stealing a camera constitutes cruel and unusual punishment. We primarily note that Mosby was sentenced as a large habitual criminal. Because Mosby does not argue that the habitual criminal punishment statute is unconstitutional, his sentence is within the parameters of that statute, *see* NRS 207.010, and we are not convinced that the sentence is so grossly disproportionate to the gravity of the offense and Mosby's history of recidivism as to shock the conscience, we conclude the sentence does not violate the constitutional proscriptions against cruel and unusual punishment. *See Harmelin v. Michigan*, 501 U.S. 957, 1000-01 (1991) (plurality opinion); *see also Ewing v. California*, 538 U.S. 11, 29 (2003) (plurality opinion); *Blume v. State*, 112 Nev. 472, 475, 915 P.2d 282, 284 (1996).

(Exh. 5 at 3.)

A sentence of life without parole is, of course, severe. But it is within the established sentencing guidelines for a large habitual offender, the State introduced 7 judgments of conviction in support of its position, and the state district court specifically

cited Mosby's extensive, if arguably largely non-violent, criminal history when it explained its sentencing decision. The Court agrees with Respondents that Mosby's argument that he was sentenced to life without parole for stealing a camera worth less than $500 dollars is misplaced; such argument fails to acknowledge that he was adjudicated a habitual criminal based on his history of criminal convictions. Mosby has not demonstrated that the Nevada Supreme Court's adjudication of this claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d). Accordingly, Mosby is not entitled to federal habeas relief on ground 1.

## B.     Ground 2

Mosby asserts the trial court impermissibly relied on speculation regarding other unknown crimes allegedly committed by Mosby when it imposed sentence in violation of his Fourteenth Amendment due process rights. (ECF No. 24 at 10.)

After the court sentenced Mosby on this case, the court moved to Case No. C272379—a conviction for ex-felon in possession of a firearm. (Exh. 52 at 7-8.) The court commented:

> You know, it's a sad thing to have to sentence someone like that, but he is a blight on our society, he is committing crimes against numerous, numerous people. And these are just the ones he got caught on. How many has he preyed upon and he wasn't caught.

(*Id.* at 8.)

On appeal, the Nevada Supreme Court rejected Mosby's contention that the sentencing court assumed he committed more felonies than what his prior convictions revealed:

> Mosby argues that the district court relied upon highly suspect evidence at sentencing when it considered that he may have committed other crimes but was never caught. However, the record demonstrates that the district court had already sentenced Mosby for the instant crime and the comments were made during sentencing for another case. We therefore conclude that Mosby has failed to demonstrate that the district court erred in this case.

(Exh. 15 at 3.)

As discussed above, the court considered Mosby's existing criminal history, specific convictions, and demonstrated recidivism. And, as the Nevada Supreme Court pointed out, the specific comments at issue were not made about the sentencing in this case—Case No. C271646. The Court concludes that Mosby has not shown the Nevada Supreme Court's adjudication of this claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d). Therefore, federal habeas relief is denied as to ground 2.

The Court thus denies the petition in its entirety.

## V. CERTIFICATE OF APPEALABILITY

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA"). Accordingly, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court's procedural ruling was correct. (*Id.*)

Having reviewed its determinations and rulings in adjudicating Mosby's petition, the Court finds that none of its rulings meets the *Slack* standard. The Court therefore declines to issue a certificate of appealability for its resolution of any of Mosby's claims.

///

///

## VI. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that the petition (ECF No. 24) is denied in its entirety.

It is further ordered that a certificate of appealability is denied.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 31st Day of August 2020.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE